# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
***

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | |
| Subject Premise 1:<br>The residence of Glen Cobb & Chaluay Namnard, 8385 Bomberos Court, Las Vegas 89113 | 2:13–mj–00947–VCF |
| Subject Premise 2:<br>The residence of Charles & Anna Cobb, 8365 Bomberos Court, Las Vegas 89113 | 2:13–mj–00948–VCF |
| In the Matter of the Seizure of Any and all funds in TD Ameritrade Account #862-702215 in the name of Charles W. Cobb & Ana M. Cobb TRS FBO Irrevocable Trust UA Jun. | 2:13–mj–00951–VCF |
| In the Matter of the Seizure of any and all Funds in Bank of America Account #501003695610 in the name of Glen Cobb | 2:13–mj–00954–VCF |
| In the Matter of the Seizure of any and all Funds in TD Ameritrade account #866-220739 in the name of Monica Namnard | 2:13–mj–00953–VCF |
| In the Matter of the Seizure of any and all Funds in USAA bank account 550-5645-8 held in the name of Glen Cobb | 2:13–mj–00961–VCF |
| | **ORDER AND**<br>**REPORT & RECOMMENDATION** |

This action involves Glen Cobb, Charles Cobb, Anna Cobb, and Monica Namnard's six Rule 41(g) motions to return property. (*See, e.g.*, Cobb's Rule 41(g) Mot. (#1) at 2[1]). Before the court are Cobb's motions for an evidentiary hearing. In response, the government filed a sealed, *ex parte*, and *in camera* motion to dismiss for lack of jurisdiction (#9) and a sealed, *ex parte*, and *in camera* motion to

---

[1] Parenthetical citations refer to the court's docket.

stay Cobb's hearing (#10). For the reasons stated below, the government's motions are denied, the court finds that it has jurisdiction to hear Cobb's action, and the June 4, 2014 evidentiary hearing will proceed as scheduled.

## BACKGROUND

This matter involves an "anomalous" proceeding in which a person aggrieved by a search and seizure may commence a civil action by filing a motion under the Federal Rules of Criminal Procedure. In these proceedings, the court's jurisdiction is rooted in equity, court procedure is governed by the Federal Rules of Civil Procedure, the defendant is the United States Attorney, and the substantive law considers whether the government's deprivation of the movant's property is reasonable under the totality of the circumstances. *See* FED. R. CRIM. P. 41(g) Advisory Comm. Notes, 1989 Amends.; *see also Lord v. Kelley*, 223 F. Supp. 684 (D. Mass. 1963), *aff'd*, 334 F.2d 742 (1st Cir. 1964), *cert. denied*, 379 U.S. 961 (1965) (discussing the "anomalous" Rule 41(g) proceedings).

Here, Glen Cobb, Charles Cobb, Anna Cobb, and Monica Namnard challenge six seizures that occurred on December 9, 2013. The seizures are the result of a twelve-year old investigation into Glen Cobb and his parents, Anna and Charles Cobb, and Monica Namnard (collectively "the Cobbs") who are professional gamblers. Together, the Cobbs operate Millstone, LLC, a corporate entity through which the family's wins and losses flow. As part of the business, Glen develops software, which the family uses to place various wagers.

In 2002, the Internal Revenue Service began investigating the Cobb family on suspicions of operating an illegal gambling operation. The Cobbs allegedly structure cash withdrawals and chip redemptions from various casinos to avoid currency transaction reporting requirements. Under 31 U.S.C. §§ 5313 and 5324, it is illegal to break up cash transactions in amounts over $10,000.00 into multiple,

smaller transactions. The IRS suspects that Cobb and his associates purposely withdraw casino chips in small denominations to launder funds. Unlike cash, casino chips are not readily traceable.

On December 19, 2013, IRS agents seized the entire account balance of several accounts owned by Glen, Charles, Anna, and Monica.[2] They seized $7,704,426.86 from Charles and Anna Cobb's TD Ameritrade account (*see* 13–mj–951), $16,422.06 from Glen Cobb's Bank of America account (*see* 13–mj–954), $118,219.49 from Monica Namnard's TD Ameritrade account (*see* 13–mj–953), and $1,600,857.35 from Glen Cobb's USAA account (*see* 13–mj–961). The IRS also executed two search and seizure warrants, one at Glen and Monica's residence (*see* 13–mj–947), and one at Charles and Anna's residence (*see* 13–mj–948). During these searches, the agents seized various computers, hard drives, cell phones, and other electronic data storage devices as well as a quantity of cash from floor safes.

To date, however, no one has been criminally charged. Similarly, no public civil forfeiture proceedings have been commenced against the seized property. As a result, Cobb filed six Rule 41(g) motions to return property. Cobb argues that the property should be returned and the court should "vacate [the government's] seizures for lack of probable cause." (*See* Cobb's Rule 41(g) Mot. (#1) at 2:23). Cobb maintains that the IRS lacked probable cause, in part, because he has repeatedly told the IRS that he withdraws currency in amounts less than $10,000.00—not to avoid the currency transaction reporting requirements—but for personal safety. Additionally, Cobb argues that (1) the government's seizure of $7,704,426.86 from Charles and Anna Cobb's TD Ameritrade account (*see* 13–mj–951) violated the Fourth Amendment because the warrant's affidavit was limited to $4 million and (2) the computers and other electronic devices should be returned because they contain software needed for his business, his tax return, and children's education.

---

[2] Monica Namard is also a member of the Cobb family and family's gambling business.

3

On April 21, 2014, the court held a hearing. The government argued that the confiscated property need not be returned, in part, because it is subject to civil forfeiture under 31 U.S.C. § 5317(c)(2). (*See* April 21, 2014, Mins. Proceedings (#6) at 50:50). The court took the parties' arguments under submission and ordered them to submit a joint prehearing order, identifying the witnesses and evidence to be proffered if the court finds that (1) the court has jurisdiction to entertain Cobb's motions and (2) an evidentiary hearing is needed to resolve the motions.

On May 2, 2014, Cobb filed a unilateral order identifying the witnesses and evidence to be proffered. On May 5, 2014, the government filed a sealed, *ex parte*, and *in camera* motion to dismiss. According to the government, Cobb's motions must be dismissed because the court lacks subject matter jurisdiction and personal jurisdiction and Cobb's motion fails to state a plausible claim. On the same day, the government also filed a sealed, *ex parte*, and *in camera* motion to stay Cobb's hearing pending resolution of the government's motion to dismiss. On May 15, 2014, the court held a status conference. This order follows.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 41(g) governs motions to return property. In full, Rule 41(g) provides,

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

FED. R. CRIM. P. 41(g).[3]

---

[3] Rule 41(e) was amended in December 2002 and is now Rule 41(g). *See* FED. R. CRIM. P. 41, Advisory Comm. Notes, 2002 Amend. The changes were stylistic only. *Id.*; *see also United States v. Gotti*, 244 F. Supp.2d 120, 122–24 (E.D.N.Y. 2003) (providing an overview of former Rule 41(e) and current Rules 41(g)).

Rule 41(g) motions may be made at any time following a search and seizure. If the motion is made after an indictment is entered, then the motion to return property is treated as a motion to suppress in the defendant's criminal prosecution. If the motion is made after the defendant pleads guilty and is sentenced, then the motion is presumptively meritorious and the property should be returned. *See United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993) (quoting *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987).

However, if a Rule 41(g) motion is made before an indictment is entered, and there are no criminal proceedings against the movant, an "anomalous" situation arises in which the motion is converted into a civil complaint requesting equitable relief. *Goodman v. United States*, 369 F.2d 166, 168 (9th Cir. 1966); *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) (citing *Matter of Search of Kitty's East*, 905 F.2d 1367, 1370 (10th Cir. 1990)); *see also Lord v. Kelley*, 223 F. Supp. 684 (D. Mass. 1963), *aff'd*, 334 F.2d 742 (1st Cir. 1964), *cert. denied*, 379 U.S. 961 (1965) (discussing the history and theory underlying "anomalous" Rule 41 motions).

In these "anomalous" proceedings, the court's jurisdiction is rooted in equity. *Id.*; *Ramsden*, 2 F.3d at 324. Court procedure is governed by the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 2 ("There is one form of action—the civil action."); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008). And, the substantive law governing the court's inquiry merely considers whether the government's continued deprivation of the movant's property is "reasonable under all of the circumstances." *United States v. Comprehensive Drug Testing*, 513 F.3d 1085, 1105 (9th Cir. 2008) ("*Comprehensive Drug Testing I*"), *opinion revised and superseded*, *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) ("*Comprehensive Drug Testing II*").

To prevail on a Rule 41(g) motion, it is not necessary for the movant to show that the search and seizure was unlawful under the Fourth Amendment.[4] WRIGHT & WELLING, FEDERAL PRACTICE & PROCEDURE: CRIMINAL § 690 (4th ed. 2009) (citing *Comprehensive Drug Testing II*, 621 F.3d at 1173). As explained by the Ninth Circuit's per curiam opinion in *Comprehensive Drug Testing II*, this is because a motion to return property serves a fundamentally different purpose than the exclusionary rule:

> That Rule 41(g) is broader than the exclusionary rule can no longer be in doubt in light of the 1989 amendments, which explicitly authorize a motion to return property on behalf of any "person aggrieved by an unlawful search and seizure of property **or by the deprivation of property**." This language was designed to expand the rule's coverage to include property lawfully seized. [. . .]
>
> The return of seized property under Rule 41(g) and the exclusionary rule serve fundamentally different purposes. Suppression helps ensure that law enforcement personnel adhere to constitutional norms by denying them, and the government they serve, the benefit of property that is unlawfully seized. Rule 41(g) is concerned with those whose property or privacy interests are impaired by the seizure. Suppression applies only to criminal defendants whereas the class of those aggrieved can be, as this case illustrates, much broader. [. . .] [B]y its plain terms, it authorizes anyone aggrieved by a deprivation of property to see its return.

*Id.* at 1173 (emphasis original; citations omitted).

Accordingly, Rule 41(g) movants must show by a preponderance of the evidence that the government's deprivation of the movant's property is unreasonable under the totality of the circumstances. FED. R. CRIM. P. 41(g), Advisory Comm. Notes, 1989 Amends.; FEDERAL PRACTICE & PROCEDURE, *supra*, at § 690; *Comprehensive Drug Testing* I, 513 F.3d at 1105; *Comprehensive Drug Testing II*, 621 F.3d at 1189; *Ramsden*, 2 F.3d at 326.

Rule 41(g)'s Advisory Committee Notes to the 1989 Amendments provide that it is reasonable for the government to retain the property if there is an ongoing prosecution or investigation. But, if the

---

[4] However, as discussed below, in the Ninth Circuit, court's consider, *inter alia*, whether the government "callously" disregarded the movant's constitutional rights. *Comprehensive Drug Testing* I, 513 F.3d at 1105; *Comprehensive Drug Testing* II, 621 F.3d at 1189; *Ramsden*, 2 F.3d at 326.

United States' "legitimate interest can be satisfied even if the property is returned, continued retention of the property would become unreasonable." Similarly, the Ninth Circuit has held that Rule 41(g) motions are properly denied "if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991).

## DISCUSSION

The parties' filings raise two questions: (1) whether the court has jurisdiction to hear Cobb's motion and, if so, (2) what the scope of the court's evidentiary hearing should be. Before resolving these questions, however, the court begins its analysis of the parties' filings by addressing two preliminary matters concerning the court's docket and the government's sealed, *ex parte*, and *in camera* motions

## I.      Cobb's Various Rule 41(g) Motions are Civil Complaints Requiring Consolidation

As discussed above, when no criminal proceedings are pending and a movant files a motion to return property under Federal Rule of Criminal Procedure 41(g), the motion is converted into a civil complaint governed by the Federal Rules of Civil Procedure. *Ibrahim*, 522 F.3d at 1007; *Ritchie*, 342 F.3d at 907. Here, Cobb filed several Rule 41(g) motions. When viewed as civil complaints under the Federal Rules of Civil Procedure, Cobb's motions should be consolidated into a one civil action.

Federal Rule of Civil Procedure 42 governs consolidation. Rule 42(a) provides, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a). District courts enjoy "broad discretion" in determining whether bifurcation is appropriate. *Zivkovic v. S. Cal. Edison Co*., 302 F.3d 1080, 1088 (9th Cir. 2002); *but see Danjaq LLC v. Sony Corp*., 263 F.3d 942, 961–62 (9th Cir. 2001) (stating that the court's discretion is limited by the defendant's Seventh Amendment right to a trial by jury). When

7

exercising its broad discretion, the court must "weigh the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984).

During the court's May 15, 2014 status conference, the court discussed this issue, and the parties stipulated to consolidating Cobb's actions. In light of the parties' stipulation, the fact that Cobb's complaints arise out of the same transaction or occurrence, request the same relief, and involve identical questions of law fact, the court recommends that the Honorable Gloria M. Navarro, Chief U.S. District Court Judge, assign Cobb's actions to a U.S. District Court Judge and U.S. Magistrate Judge, and consolidate the actions into a single civil action, for further proceedings in accordance with the Federal Rules of Civil Procedure.

## II.     The Government's Sealed, *Ex Parte*, *In Camera* Motions

Having addressed the first preliminary matter, the court now turns to the second: the government's two sealed, *ex parte*, and *in camera* motions. It is well settled that dispositive motions may only be sealed for "compelling reasons." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006). It is similarly well settled that motions may only be submitted to the court on an *ex parte* basis for good cause. *See* LR 7-5(b). Nonetheless, the government filed a sealed, *ex parte*, and *in camera* motion to dismiss Cobb's action without making any attempt to comply with either *Kamakana* or Local Rule 7-5(b). When placed in the broader context of Cobb's action, the government's failure to comply with *Kamakana* and Local Rule 7-5(b) is troubling.

There is no reason why the government's motion to dismiss (rather than the exhibits) should be filed under seal or on an *ex parte* and *in camera* basis. The motion consists entirely of boilerplate legal arguments, which Cobb could have opposed without jeopardizing the government's criminal investigation or civil forfeiture actions. It is no secret that the government is pursuing forfeiture—

8

whether civil or criminal—against the seized property. Criminal warrants have been issued, the property has been seized, and during the court's April 21, 2014 hearing, the government relied on a civil forfeiture statute, 31 U.S.C. § 5317(c)(2), to maintain possession of the property. (*See* April 21, 2014, Mins. Proceedings (#6) at 50:50).

However, the real problem with the government's sealed, *ex parte*, and *in camera* motion to dismiss stems from the motion's arguments. The government contends that Cobb's civil equitable proceeding should be dismissed because Cobb has an alternative remedy at law. That is, Cobb may litigate this action for the return of property by filing claims in the two civil forfeiture proceedings that have been commenced against the property. While facially valid, this argument fails to recognize that both of the civil forfeiture actions are stayed and have been filed under "super seal."

Commencing an action under super seal means that the documents are not loaded into the court's electronic docketing system and that the public does not have access to either the files or even the names of the parties involved in the litigation. The pleadings and papers involved in super-sealed cases are stored in the court's vault and the public cannot access these files. Presumably, the super-sealed files in Cobb's civil forfeiture actions will become unsealed and the stay lifted at some point in the future; but the government has not indicated when this would be appropriate.

Accordingly, the government's sealed, *ex parte*, and *in camera* motion to dismiss takes the position that Cobb's Rule 41(g) proceeding should be dismissed without notice to Cobb because Cobb has an alternative remedy at law, which he was not notified of, cannot access, and the government prevented Cobb from discovering.

This is unacceptable. Relying on various sealed and super-sealed filings, the government asks the court to rule against private citizens, allow the deprivation of their property, and deny them a process to redress possible violations of their constitutional rights through a secret government action that provides

no notice or opportunity to be heard. Saying that this would offend the Constitution is an understatement. It is "constitutionally abhorrent." *See, e.g.*, *Larez v. City of Los Angeles*, 946 F.2d 630, 649 (9th Cir. 1991) (stating that it is "constitutionally abhorrent" "where constitutional rights have been violated maliciously or recklessly but the victim can prove no compensable injury"); *Wyatt v. Bratschi*, 900 F.2d 258 (4th Cir. 1990) (citing *Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986) (en banc) (calling a plaintiff's de facto bar to exercise his constitutional right of access to the courts "constitutionally abhorrent").

There is very little room for such requests in the American judicial system. The basic premise of our system is that "every right, when withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison*, 1 Cranch 137, 163 (1803). The government overlooks this tenant. It moves the court to exclude a private citizen whose constitutional and property rights are at issue so the government can resolve the matter behind closed doors. Worse still, the government failed to offer any justification—let alone a cognizable justification—for its extraordinary request. This matter involves an equitable challenge to a criminal investigation for structuring financial transactions, failing to pay taxes, and operating an illegal gambling business. Yet, the government has taken actions as if the suspects threaten public safety or national security.

## III.   Whether the Court Lacks Jurisdiction over Cobb's Rule 41(g) Complaint

Having addressed the government's failure to comply with the Ninth Circuit's decision in *Kamakana* and Local Rule 7-5(b), the court turns to the substance of the parties' filings: whether the court lacks jurisdiction over Cobb's Rule 41(g) complaint. The court concludes that it has jurisdiction to hear Cobb's action with regard to the seized computers and Bank of America account and that it may have jurisdiction to hear Cobb's action with regard to the two TD Ameritrade accounts and the USAA account. Before explaining the basis for the court's holding, a review of the law governing jurisdiction

10

in civil equitable actions under Rule 41(g) is required.

**A.     *Equitable Jurisdiction & Federal Rule of Criminal Procedure 41(g)***

When a person aggrieved by a search and seizure moves for the return of property, and no criminal proceedings are pending, the motion is converted into a civil complaint that is subject to the Federal Rules of Civil Procedure. *Ramsden*, 2 F.3d at 324 (citing *Matter of Search of Kitty's East*, 905 F.2d 1367, 1370 (10th Cir. 1990)); *Ibrahim*, 522 F.3d at 1007 ("Because there were no criminal proceedings pending at the time of filing, the district court properly treated the [Rule 41(g)] motion as a civil complaint governed by the Federal Rules of Civil Procedure"); *Ritchie*, 342 F.3d at 907 (a district court may not "treat a Rule 41 [(g)] motion as something less than a civil complaint when there is no pending criminal proceeding").

The court's jurisdiction to entertain Rule 41(g) complaints stems from the court's supervisory powers. In *Hunsucker v. Phinney*, 497 F.2d 29, 31 (5th Cir. 1974)  *cert. denied*, 420 U.S. 927 (1975), the Fifth Circuit described the theory supporting equitable jurisdiction in the context of a Rule 41(g) action as follows:

> Whenever an officer of the court has in his possession or under his control books or papers, or (by parity of reasoning) any other articles in which the court has official interest, and of which any person (whether party to a pending litigation or not) has been unlawfully deprived, that person may petition the court for restitution. This I take to be an elementary principle, depending upon the inherent disciplinary power of any court of record. Attorneys are officers of the court, and the United States attorney does not by taking office escape from this species of professional discipline. Thus power to entertain this motion depends on the fact that the party proceeded against is an attorney, not that he is an official known as the United States attorney. It is further true that the right to move does not at all depend on the existence of this indictment; it might be made, were no prosecution pending.

*Hunsucker*, 497 F.2d at 31 n. 3 (citing *United States v. Maresca*, 266 F. 713, 717 (S.D.N.Y. 1920)); *see also* U.S. Const. art. III, § 2, cl. 1 (permitting federal courts to hear cases arising in equity). However, the court's jurisdictional power to hear these cases is limited, *see Ramsden*, 2 F.3d at 324–25,

and the court must engage in a two-step inquiry to determine whether jurisdiction exists.

First, the court must determine whether it **can** exercise equitable jurisdiction. At common law, courts properly exercised equitable jurisdiction where "the remedy in equity could alone furnish relief." *Watson v. Sutherland*, 5 Wall. 74, 79 (1867) (citing JOSEPH STORY, 1 EQUITY JURISPRUDENCE § 709). "It is an elementary equity rule that courts of equity do not have jurisdiction to grant relief, where the plaintiff has a plain, adequate, and complete remedy at law." *Standard Oil v. Atlantic Coast Line R. Co*., 16 F.2d 441 (6th Cir. 1926) *aff'd in part, rev'd in part*, 275 U.S. 257 (1927). "It is the historic purpose of equity to secure complete justice." *United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir. 1987) (citing *EEOC v. Gen. Telephone Co*., 599 F.2d 322, 334 (9th Cir. 1979), *aff'd* 446 U.S. 318, 446 U.S. 318 (1980)).

In the context of Rule 41(g), this means that an equitable proceeding can commence only if the government has not charged the defendant or commenced a civil forfeiture action against the confiscated property. *See, e.g.*, *United States v. Elias*, 921 F.2d 870, 872 (9th Cir. 1990) (citing *Martinson*, 809 F.2d at 1366–69)). If either of these proceedings begins, the court is divested of equitable jurisdiction. *See id*. Additionally, Rule 41(g) expressly limits the court's jurisdiction to property seized in the district in which the court sits. *See* FED. R. CRIM. P. 41(g) ("The motion must be filed in the district where the property was seized.").

Second, the court must determine whether it **should** exercise equitable jurisdiction. When making this inquiry, district courts are instructed to exercise "caution and restraint." *Ramsden*, 2 F.3d at 324 (citing *Kitty's East*, 905 F.2d at 1370)). To prevent courts from exercising equitable jurisdiction too liberally, the circuit courts have expounded a four-factor test that must be balanced before deciding the merits of a Rule 41(g) motion. *Ramsden*, 2 F.3d at 325 (citing *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975)). These factors are: (1) whether the government displayed a callous

12

disregard for the constitutional rights of the movant; (2) whether the movant has an individual interest in and need for the property he wants returned; (3) whether the movant would be irreparably injured by denying return of the property; and (4) whether the movant has an adequate remedy at law for the redress of his grievance. *Id*.

The burden of proving jurisdiction rests on the party asserting jurisdiction, *see McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936), and the U.S. Supreme Court has long directed lower courts to presume that they lack jurisdiction. *Turner v. Bank of North Am.*, 4 Dall. 8, 11 (1799).

**B.**    ***First Prong: Whether the Court Can Exercise Equitable Jurisdiction***

The government proffers two sets of arguments against the court's exercise of equitable jurisdiction. The government contends that jurisdiction is lacking because (1) Cobb's complaint does not comply with the Federal Rules of Civil Procedures' formal pleading and service requirements and (2) the court cannot exercise equitable jurisdiction over Cobb's motion because he has a remedy at law. The court disagrees. However, the court finds that it may lack jurisdiction to hear a portion of Cobb's action because it is unclear whether the property was seized in the District of Nevada. This point is discussed after addressing the government's challenges to the court's jurisdiction.

1.    Whether Cobb's complaint complies with the Federal Rules of Civil Procedure

As discussed above, when no criminal proceeding is pending, a Rule 41(g) motion is treated as a civil complaint under the Federal Rules of Civil Procedure. *Ibrahim*, 522 F.3d at 1007; *Ritchie*, 342 F.3d at 907. Relying on this proposition, the government makes a variety of arguments that the court must dismiss Cobb's action because the complaint does not comply with the rules' formal pleading and service requirements. These arguments are frivolous and occasionally absurd.

13

First, the government contends Cobb's action must be dismissed because Cobb failed to affirmatively plead jurisdiction. This argument is frivolous. Federal Rule of Civil Procedure 8(a)(1) states that "[a] pleading . . . must contain a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." Here, it is undisputed that Cobb's motions were filed in response to several search and seizure warrants, which were issued by this court and signed by the undersigned magistrate judge. This means that it was not necessary for Cobb to affirmatively plead jurisdiction because, from a formal pleadings perspective, "the claim needs no new jurisdictional support." FED. R. CIV. P. 8(a)(1).

Even if it were necessary for the papers to affirmatively plead jurisdiction, Cobb's motions, (*see, e.g.*, Doc. #1 at 2:25–26, 13–mj–947); (Doc. #1 at 2:25–26, 13–mj–948), the government's responses, (*see, e.g.*, Doc. #4 at 4:12, 13–mj–951); (Doc. #2 at 2:22, 13–mj–948), and Cobb's replies, (*see, e.g.*, Doc. #3 at 2:3–13, 13–mj–947), provide a short and plain statement of the grounds for the court's jurisdiction under Rule 41(g). For instance, Cobb states: "Though styled as a motion under Rule 41(g), a request for return of property by a party against whom no criminal charges have been brought is in fact a petition that the district court invoke its civil equitable jurisdiction." *Id.* (citing *Comprehensive Drug Testing II*, 621 F.3d at 1172). The government's opposition contains the same quotation from the same Ninth Circuit authority. (*See* Gov't's Opp'n (#4) at 4:16–19 *in* 13–mj–951). This thoroughly satisfies Rule 8(a)(1).

Second, the government contends that Cobb's action must be dismissed because it is barred by the doctrine of sovereign immunity. This argument is absurd. It is well settled sovereign immunity is not a jurisdictional bar where, as here, the movant seeks injunctive relief. *See Ex parte Young*, 209 U.S. 123 (1908). If sovereign immunity acted as a bar to civil equitable proceedings under Rule 41(g), then there would be no such thing has a civil equitable proceeding under Rule 41(g) because the only possible

defendant in these proceedings is the government and the only relief that can be sought is equitable: the return of property.

Third, the government argues that Cobb's action must be dismissed because Cobb "failed to allege sufficient facts to support jurisdiction." This argument is frivolous. The government appears to assume that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) interpret Federal Rule of Civil Procedure 8(a)(1), which requires a short and plain statement of the grounds for the court's jurisdiction. They do not. *See Iqbal*, 556 U.S. at 677–80.

Fourth, the government contends that the court must dismiss Cobb's action for lack of personal jurisdiction because Cobb failed to serve the United States. This argument is meritless. As a general matter, there is no doubt that the court has personal jurisdiction over the United States government. Approximately eighty six percent of the land in this district is managed by the federal government. *See, e.g.*, BUREAU OF LAND MANAGEMENT, *Nevada Federal Agency Acres Managed by County* http:// web. archive.org/web/20060930112237/http://www.nv.blm.gov/ landsales/LandFed Acres Agency.pdf. This satisfies *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The heart of the government's personal-jurisdiction argument—(*viz.*, that Cobb's action must be dismissed for failure to comply with Rule 4)—is equally meritless. The purpose of Rule 4 is to notify defendants of the claims against them when a plaintiff commences a civil action. *See* FED. R. CIV. P. 4. The Ninth Circuit has held that failure to fully comply with all of the technical requirements of Rule 4 does not—as the government asserts—warrant dismissal "absent a showing of prejudice." *United Food & Commercial Workers Union v. Alpha Beta Co*., 736 F.2d 1371, 1382 (9th Cir. 1984). This is because Rule 4 is a "flexible rule" that only requires that a party receive sufficient notice of the claims brought against it. *Chan v. Soc'y Expeditions, Inc*., 39 F.3d 1398, 1404 (9th Cir. 1998).

15

Here, the government searched the Cobb's homes, seized millions of their dollars, and opposed the Cobb's legal attempts to reclaim their property. This is notice. Nonetheless, Cobb must comply with Rule 4's technical requirements and is ordered to serve a copy of his equitable complaint on the government pursuant to Rule 4(i)(1) on or before May 30, 2014. *See, e.g.*, *Turner v. Gonzales*, No. 06–4020, 2007 WL 1302126, at *1 (7th Cir. 2007) (Posner, J) (referencing service under Rule 4 in the context of a civil Rule 41(g) motion); *see also* FED. R. CIV. P. 2 ("There is one form of action—the civil action.").[5]

Fifth, the government contends that the court must dismiss Cobb's action because Cobb failed to plead sufficient facts showing that he is entitled to relief. This argument is frivolous. When determining whether a complaint complies with Rule 8, the court engages in a two-step inquiry. First, the court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Second, the court must determine whether the complaint states a "plausible" claim for relief. *Id*. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

Here, there is no question that Cobb's complaint satisfies Rule 8.[6] (*See generally* Cobb's Rule 41(g) Mot. (#1) at 1–6). In fact, the government's motion to dismiss does not even examine—let alone contest the legal sufficiency of—Cobb's factual allegations. The government's motion is boilerplate. It quotes passages from *Iqbal*, *Twombly*, and their progeny before jumping to the conclusion that "[t]he

---

[5] The Advisory Committee Notes to Rule 2 state that suits at law and suits in equity are to be treated identically under the Federal Rules of Civil Procedure. This suggests that Rule 4 must apply to Cobb's Rule 41(g) complaint, even though the government initiated the action by searching Cobb's home and seizing his property.

[6] Because Cobb's complaint survives the government's Rule 12(b)(6) motion to dismiss, the government's motion to stay fails as a matter of law. *See TradeBay, LLC v. Ebay, Inc*., 278 F.R.D. 597, 600 (D. Nev. 2011).

movants fail to give a simple statement of the alleged facts in [in support of] the equitable Rule 41(g) complaint." This is false. Cobb alleges in detail how the government executed multiple search and seizure warrants at his house and at various banks where he held accounts, how the government deprived him of his property, including several personal computers and millions of dollars, and that the government has not instituted criminal proceedings against him. (*See id.*) Under Rule 8, this is shows that Cobb has a plausible claim for equitable relief pursuant to Rule 41(g).

Finally, in a bizarre twist of irony, the government strenuously asserts that Cobb's complaint ignores the Federal Rules of Civil Procedure. In fact, the government's motion to dismiss ignores Federal Rule of Civil Procedure 12(d). This rule states,

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. P. 12(d). Here, the government filed a sealed, *ex parte*, *in camera* motion to dismiss under Rules 12(b)(6) and 12(c). However, the motion presents at least eight matters outside the pleadings. Under Rule 12(d), the court must either convert the government's motion into a motion for summary judgment and allow Cobb to respond to the extraneous material or exclude the extraneous material. *See id.* To avoid jeopardizing the government's criminal investigation and civil forfeiture actions, the court takes the latter route and excludes the government's exhibits.

In sum, the government's arguments are frivolous, sometimes absurd, and fail as a matter of law. Throughout the motion to dismiss, the government repeatedly elevates form over substance, misconstrues basic legal doctrines, ignores the facts and filings of Cobb's case, and disregards the fundamental premise of federal practice: "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1; *see also* FED. R. CRIM. P. 2 ("These rules are to be

interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.").[7]

### 2.   Whether Cobb has a remedy at law

Having concluded that Cobb's complaint complies with the Federal Rules of Civil Procedure, the court next considers whether Cobb has a remedy at law that would divest the court of equitable jurisdiction. *See, e.g.*, *Watson*, 5 Wall at 79; *Martinson*, 809 F.2d at 1367. The government contends that subject matter jurisdiction is lacking because (1) the government commenced two civil forfeiture actions against Cobb's property, (2) Federal Rule of Criminal Procedure 1(a)(5)(b) compels dismissal, (3) Cobb has an adequate remedy at law, and (4) Cobb's Rule 41(g) complaint failed to use the proper procedure for civil forfeiture hardship determination. Although presented as four independent arguments, these arguments actually stand for same proposition stated four different ways: the court cannot exercise jurisdiction over Cobb's action because pending civil forfeiture actions provide Cobb with a remedy at law.[8]

Once again, the government's position is frivolous, if not absurd. Cobb does not have an adequate remedy at law because the government filed its civil forfeiture proceedings under super seal. Super seal means that Cobb received no notice of the actions and that Cobb cannot read or access any of the documents pertaining to the action. It offends common sense and the fundamental tenants of due process for that the government to assert that Cobb's adequate remedy at law is a super-sealed proceeding about which the government has provided no notice and opportunity to be heard. In fact, the

---

[7] These criticisms are not directed at Assistant United States Attorney Cristina Silva, whose filings and oral arguments are consistently informative and well-researched.

[8] Federal Rule of Criminal Procedure 1(a)(5)(b) provides that the criminal rules do not apply to civil forfeiture proceedings. Interpreting Rule 1(a)(5)(b), the Ninth Circuit held that it "compels" the dismissal of Rule 41(g) motions when a civil forfeiture proceeding is pending because the civil forfeiture action provides an adequate remedy at law. *See United States v. $83,310.78*, 851 F.2d 1231, 1233 (9th Cir. 1988).

government has put in place mechanisms to prevent Cobb from accessing information about the civil forfeiture actions.

In *United States v. Clagett*, 3 F.3d 1355 (9th Cir. 1993), the Ninth Circuit stated that if "the forfeiture proceeding was never available to [the claimant] in any meaningful sense" because the notice was inadequate, then it cannot be considered an adequate remedy at law. *Id*. at 1356. The Ninth Circuit also noted that "if notice was adequate[,] the forfeiture proceeding provided an adequate legal remedy and [the claimant] will not be entitled to equitable relief." *Id*. at 1356 n. 1.

Here, no notice was provided. No notice is inadequate notice. Therefore, the government's arguments that the court cannot exercise equitable jurisdiction fail as a matter of law.

3. Whether Cobb's various bank accounts were seized in this district

Having addressed the government's various jurisdictional arguments, the court now discusses one aspect of Cobb's action that may partially divest the court of jurisdiction: the location of the funds in three of the accounts when the warrants were issued and the funds were seized.

Federal Rule of Criminal 41 governs search and seizure. In general, Rule 41(b) only authorizes magistrate judges to issue warrants for property that is located "within the district when the warrant is issued." *See* FED. R. CRIM. P. 41(b)(1)–(2). Accordingly, a motion to return property "must be filed in the district where the property was seized." FED. R. CRIM. P. 41(g). In Rule 41(g) actions, this limits the court's jurisdiction to property that was located in the district in which the court sits when the property was seized. *See, e.g.*, *United States v. Abreu*, 730 F. Supp. 1018 (D. Colo. 1990), *aff'd*, 935 F.2d 1120 (10th Cir. 1991) (*cited in* FEDERAL PRACTICE & PROCEDURE, *supra*, at § 690); *see also Clymore v. United States*, 164 F.3d 569, 574–57 (10th Cir. 1999), *superseded by statute*, Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106–185, § 2,114 Stat. 202, 208, *as recognized in Kadonsky v. United States*, 3 F. App'x 898, 904 n. 6 (10th Cir. 2001) (holding that the District of New Mexico lacked

19

jurisdiction to hear the movant's Rule 41(g) action because District of New Mexico's criminal matter ended and the property was seized in the Western District of Texas).

Here, there is no doubt that Cobb's computers, other electronic devices, and funds in the Bank of America account were seized in the District of Nevada. However, it is unclear whether Charles and Anna Cobb's TD Ameritrade account (13–mj–951; $7,704,426.86), Monica Namnard's TD Ameritrade account (13–mj–953; $118,219.49), and Glen Cobb's USAA account (13–mj–961; $1,600,857.35) were located in the District of Nevada when they were seized. In each matter, the warrant application stated that "the government requests that certain property located in the Clark County District of Nevada be seized." (*See, e.g.*, Warrant App. in 13–mj–951). However, each of the warrant returns in these matters states that a copy of the warrant was faxed to bank representatives whose area code is outside of the District of Nevada. This indicates that Cobb's funds may not have been seized in the District of Nevada.[9] If so, this would deprive the court of jurisdiction to hear Cobb's Rule 41(g) complaints in 13–mj–951, 13–mj–953, and 13–mj–961.

Accordingly, because the burden of proving jurisdiction rests on the party asserting it, *see McNutt*, 298 U.S. at 182-183, Cobb must demonstrate that the seized funds were located in the District of Nevada. The court will hear arguments on the location of the seized funds during the June 4, 2014 evidentiary hearing.

---

[9] As a result, it is also unclear whether—or to what extent—the government's search warrants are valid. Under Rule 41(b), magistrate judges are authorized (1) "to issue a warrant to search for and seize a person or property located within the district" and (2) "to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed." It now appears that some of the seized property was not in District of Nevada when the warrants were issued. Some of the warrant returns indicate that some of the accounts listed in the warrant affidavit were located in area codes outside of the District of Nevada. *Compare, e.g.*, (Kressin Aff. (#1) at 20:16–19) (discussing four transfers totaling $3 million between a TD Ameritrade account and an USAA account) *with* (Warrant Returns 13–mj–951 & 13–mj–961) (indicating that the TD Ameritrade accounts and USAA account are located in area codes in Nebraska and Texas).

**C.**     ***Second Prong: Whether the Court Should Exercise Equitable Jurisdiction***

Having concluded that the court can exercise equitable jurisdiction over at least portion of Cobb's action (i.e, 13–mj–947, 13–mj–948, 13–mj–954), the court now turns to the second prong of its jurisdictional inquiry: whether the court should exercise equitable jurisdiction.

When determining whether the court should exercise equitable jurisdiction under Rule 41(g), district courts are instructed to employ "caution and restraint" and balance four factors: (1) whether the government displayed a callous disregard for the constitutional rights of the movant; (2) whether the movant has an individual interest in and need for the property he wants returned; (3) whether the movant would be irreparably injured by denying return of the property; and (4) whether the movant has an adequate remedy at law for the redress of his grievance. *Ramsden*, 2 F.3d at 325 (citing *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975)). Here, these factors militate in favor of exercising jurisdiction.

First, the court must consider "whether the government displayed a callous disregard for the constitutional rights of the movant." *Id*. The government argues that this factor favors the government because the government obtained six search and seizure warrants before depriving Cobb of his property. In response, Cobb asserts that the warrants lacked probable cause and that the seizures were unreasonable because they exceeded the warrant's scope.

Generally, when examining the first *Ramsden* factor, the court's inquiry is limited. It merely considers—as the government's criminal counsel argues—whether the government acted pursuant to a search warrant. For instance, in *Ramsden*, the Ninth Circuit affirmed the district court's conclusion that the government acted with callous disregard because the government admitted that the search violated Ramsden's Fourth Amendment rights. *Ramsden*, 2 F.3d at 325. Similarly, in *Richey*, the Fifth Circuit stated that a finding of "callous disregard" is warranted "where government agents have allegedly

21

engaged in fraudulent or deceitful methods in order to gain access to a citizen's private papers." *Richey*, 515 F.2d at 1243 n. 8 (citations omitted).

On first glance, *Ramsden* and *Richey* appear to rebut Cobb's position. Indeed, *Richey* explicitly distinguishes between cases where the government "engaged in fraudulent or deceitful methods in order to gain access to a citizen's private papers"—which support a finding of callous disregard—and cases where the search and seizure was conducted pursuant to a search warrant, which was "subsequently challenged as invalid." *Richey*, 515 F.2d at 1243 n. 8 (citing *Coury v. United States*, 426 F.2d 1354 (6th Cir. 1970)). Under *Richey*, subsequently challenging a warrant—which is what Cobb's complaint does—does not generally support a finding of callous disregard. *Id.*

However, in *Comprehensive Drug Testing II*, 621 F.3d at 1167–71, an en banc panel affirmed two district court findings of callous disregard where the government obtained a valid search warrant but failed to follow the procedures set forth in *United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982) when executing the warrant. In *Tamura*, the Ninth Circuit set forth mandatory procedures for executing warrants where documents that are searchable and seizable are intermingled with non-searchable and non-seizable documents.[10] The purpose of *Tamura's* procedures is to prevent a particularized warrant from being converted into a general warrant by the government's indiscriminate execution of the

---

[10] In *Comprehensive Drug Testing II*, the court extended *Tamura* to electronically stored information and recommended the following five guideposts to help magistrate judges ensure that non-seizable information is protected: (1) magistrate judges should insist that the government waive reliance upon the plain view doctrine in digital evidence cases; (2) segregation and redaction of electronic data must be done either by specialized personnel or an independent third party. If the segregation is to be done by government computer personnel, the government must agree in the warrant application that the computer personnel will not disclose to the investigators any information other than that which is the target of the warrant; (3) warrants and subpoenas must disclose the actual risks of destruction of information as well as prior efforts to seize that information in other judicial fora; (4) the government's search protocol must be designed to uncover only the information for which it has probable cause, and only that information may be examined by the case agents; and (5) the government must destroy or, if the recipient may lawfully possess it, return non-responsive data, keeping the issuing magistrate judge informed about when it has done so and what it has kept. *Comprehensive Drug Testing*, 621 F.3d at 1180.

22

warrant's terms.[11] Accordingly, in *Comprehensive Drug Testing II*, the Ninth Circuit affirmed the district court's finding of callous disregard where the government seized computers containing searchable and non-searchable data but, nonetheless, searched all of the data, claiming that once seized all data became lawfully searchable because it automatically came into plan view. *Comprehensive Drug Testing II*, 621 F.3d at 1170–71.

A similar, albeit not identical, situation exists here. The government's warrant affidavit limited the IRS's seizure of Charles and Anna's TD Ameritrade account to $4 million dollars. However, the government seized $7,704,426.86. During the court's April 21, 2014, hearing, the government was unable to provide a cognizable justification for seizing the extra $3.7 million. The government asserted that the $3.7 million represents accrued interest from 2011, which it plainly does not, and that the $3.7 million is seizable because it is subject to forfeiture under 31 U.S.C. § 5317(c)(2) as "property involved in" a violation of sections 5313, 5316, or 5324. (*See* April 21, 2014, Mins. Proceedings (#6) at 50:50).

This argument is unpersuasive. The warrant authorized the government to seize $4 million dollars, not $7,704,426.86; and the government made no showing that the extra $3.7 million is traceable to an illegal transaction. *See United States v. $3,148,884.40*, 76 F. Supp. 2d 1063, 1066 (C.D. Cal. 1999) (citing *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1159 (2d Cir. 1986) (holding that illegally obtained funds that were commingled with legitimate funds could still be forfeited "but only to the extent that it could be shown that a traceable connection to an illegal transaction in controlled substances existed."). The government's section 5317(c)(2) argument is a post hoc justification, which relies on a civil statute to justify a Fourth Amendment violation that occurred in the criminal context.

---

[11] Although Cobb argues that his various computers, cell phones, and other electronic devices should be returned because they contain information that is irrelevant to the government's investigation (i.e., his children's school work and information that Cobb needs to prepare his tax return), Cobb did not challenge the warrants' execution under *Tamura*.

23

However, the government seized the $7,704,426.86 pursuant to a warrant in 13–mj–951. As discussed above, it is unclear whether the court has jurisdiction over this portion of Cobb's action because the funds may not have been located in the District of Nevada when the warrant was issued and the funds were seized. On the one hand, this means that the court must presume that it lacks jurisdiction, *see Turner*, 4 Dall. at 11, and, therefore, refrain from predicating a finding of callous disregard on this portion of Cobb's complaint. On the other hand, however, this risks rewarding the government for engaging in behavior that callously disregarded Cobb's Fourth Amendment rights by (1) obtaining seizure warrants that may violate Rule 41(b), (*see supra* n. 9), and (2) indiscriminately executing a particularized warrant so that it became a general warrant. Either way, this presents a "factual issue necessary to decide the motion," which means that the court must hold a hearing. *See* FED. R. CRIM. P. 41(g).

The court also recognizes that Cobb's case presents an independent basis which may support a finding of callous disregard. As discussed above, the government's civil counsel has taken the position that the court should dismiss Cobb's civil equitable action—without notice to Cobb—because Cobb has an alternative remedy at law, about which the government has provided no notice or opportunity to be heard and has prevented Cobb from discovering. Although this does not directly support a finding that the government callously disregarded Cobb's Fourth Amendment rights, it strongly supports a finding that the government is callously disregarding Cobb's right to due process.[12] "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). Here, the government asks the court to disregard Cobb's due process rights to prevent him from vindicating his Fourth Amendment rights. This weighs heavily in favor of holding a hearing.

---

[12] Stated differently, this indicates that the government callously disregarded Cobb's due process rights in order to prevent him from vindicating his Fourth Amendment rights.

The second *Ramsden* factor also favors Cobb. In *Ramsden*, the Ninth Circuit found that the movant established an interest in and need for confiscated property because it was "necessary for Ramsden to run his business." *Ramsden*, 2 F.3d at 325. Cobb's case is analogous. He argues that the confiscated computers and software are "vital" to his personal business. (*See* Cobb's Reply (#3) at 2:16). In his capacity as a professional gambler, Cobb has developed elaborate software that is stored on the seized computers. Cobb relies on the software to crunch numbers and synthetize sports statistics to place winning wagers. Additionally, the confiscated computers contain healthcare information, documents related to his children's schoolwork, and files that Cobb needs to complete his tax return. (*Id.* at 2:15–19).

The second *Ramsden* factor also militates in the Cobb's favor with regard to the seized funds. The government argues that the Cobb's have no need for the seized funds because there is approximately $4.5 million dollars remaining in one of Glen Cobb's TD Ameritrade accounts. (*See* Gov't's Opp'n (#4) at 7:22–24). This argument is unpersuasive for two reasons. First, this argument only applies to Glenn Cobb because it is his account, not Charles, Anna, or Monica's account. (*See* Warrant App. in 13–mj–952). Second, the funds in the account are held in an irrevocable trust, the terms of which allegedly limit Glen's ability to spend to the funds.[13] (Cobb's Reply (#7) at 7:5–11).

Accordingly, the second *Ramsden* factor militates in Cobb's favor because the government seized either all or the vast majority of the Cobb's assets. Cobb argues that he and his family need the money from that account for food, daily expenses, and his personal business. (*See* Mins. Proceedings #6). This raises a cognizable "factual issue necessary to decide the [Rule 41(g)] motion" and requires the

---

[13] This account is not involved in Cobb's civil equitable action because the warrant was obtained in 13–mj–952 and the Cobbs have not filed at Rule 41(g) motion in that matter.

court to hold a hearing. *See* FED. R. CRIM. P. 41(g).[14]

The third *Ramsden* factor requires the court to determine "whether the movant would be irreparably injured by denying return of the property." In *Ramsden*, the Ninth Circuit stated that "[t]he mere threat of prosecution is not sufficient to constitute irreparable harm." *Ramsden*, 2 F.3d at 326. Additionally, the Ninth Circuit noted that the district court properly discounted the movant's argument that he would suffer irreparable injury if the confiscated property deprived the movant of his ability to run his business and, in turn, support his family. *Id*. at 225. The district court properly discounted this argument because the movant had been supplied with copies of the needed documents. *Id*.

Here, the situation is different. The government has confiscated Cobb's personal computers, software, and documents but not provided Cobb with copies. This, Cobb contends, prevents him from being able to "conduct his livelihood and properly provide for his family." (*See* Cobb's Reply (#3) at 2:22). The court agrees. *See Matter of Search of Premises Known as 6455 S. Yosemite, Englewood, Colo*., 897 F.2d 1549, 1557 (10th Cir. 1990) (finding no irreparable injury only because the movant was

---

[14] Before turning to the third *Ramsden* factor, the court briefly addresses Cobb's argument that he "needs" the seized funds to pay for an attorney. There is no Sixth Amendment right to counsel in civil cases. *Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011). However, in cases like this where the government seizes the very assets that a suspect or criminal defendant needs to hire defense counsel, a "substantial concern" arises that the prosecutor may "elect to hamstring his target" by unilaterally freezing the target's assets and, therefore, stop "him from [retaining] his counsel of choice." *Kaley v. United States*, 134 S.Ct. 1090, 1107 (2014) (Roberts, C.J., dissenting).

In *Kaley*, the Supreme Court addressed this concern in a different context. The court held that a criminal defendant is not constitutionally entitled to a pre-trial hearing to contest a grand jury's determination of probable cause and, thereby, reclaim assets that the government seized to retain counsel. *Id*. at 1094. The majority's conclusion rested on two points. First, that grand jury determinations are inviolate and not subject to relitigation. *Id*. at 1097. Second, that the probable value of a judicial safeguard is negligible because grand jury determinations are never overturned. *Id*. at 1104.

During the court's April 21, 2014, hearing, the government argued that *Kaley* foreclosed Cobb's argument that he "needs" the funds to hire counsel. This court is unconvinced. Although *Kaley* and Cobb address similar concerns—(i.e., the government's seizure of assets needed to retain his counsel of choice)—Cobb's concern arises at a very different stage in criminal procedure. In *Kaley*, a grand jury had returned a finding of probable cause, the government formally charged the defendants, and the court issued an order permitting the seizure the assets. *See id*. at 1095–96. Only one judicial safeguard existed here: the court's review of the government's warrant application. This militates in Cobb's favor.

26

provided with copies).

This factor also favors Cobb with regard to the seized funds. In *Mr. Lucky Messenger Service, Inc. v. United States*, 587 F.2d 15, 18 (7th Cir. 1978) the Seventh Circuit stated, "[w]henever the government seizes a significant amount of money and withholds it for an unreasonable length of time without bringing charges and without offering evidence to justify its continued withholding and without any indication as to when if ever charges will be filed, the plaintiff suffers irreparable harm." Unlike *Mr. Lucky*, the government here commenced two civil forfeiture actions against Cobb and proffered evidence to justify its continued withholding of Cobb's funds. However, these two distinctions are meaningless in light of the circumstances of Cobb's case.

First, the civil forfeiture actions were filed under super seal. This deprived Cobb of any notice or opportunity to respond to the government's allegations. Second, the evidence proffered by the government to support its continued withholding of Cobb's funds was submitted on a motion to dismiss. This required the court to either disregard the government's evidence under or convert the government's motion into a motion for summary judgment, disclosed sealed information to give Cobb an opportunity to respond, and risk jeopardizing the government's investigations. To avoid this result, the court took the former route and excluded the government's exhibits. (*See supra* § III(B)(1)).

Finally, the court must consider whether Cobb has an adequate remedy at law. The government argues that Cobb has an adequate remedy at law because the government commenced two super-sealed civil forfeiture proceedings against his property. The court previously rejected this argument. (*See supra* §§ II, III(B)(2), III(C) (discussing the first *Ramsden* factor)).

/// /// ///

/// /// ///

/// /// ///

27

IV.     **The Scope of the Court's Evidentiary Hearing**

Having concluded that the court has jurisdiction to entertain Cobb's complaint, the court must hold a hearing and "receive evidence on any factual issue necessary to decide the motion." *See* FED. R. CRIM. P. 41(g).

During the hearing, Cobb bears the burden of showing by a preponderance of the evidence that the government's deprivation of his property is not reasonable under the totality of the circumstances. FED. R. CRIM. P. 41(g), Advisory Comm. Notes, 1989 Amends.; FEDERAL PRACTICE & PROCEDURE, *supra*, at § 690; *Comprehensive Drug Testing I*, 513 F.3d at 1105; *Comprehensive Drug Testing II*, 621 F.3d at 1189; *Ramsden*, 2 F.3d at 326. If the movant satisfies this burden, it is not necessary for the court to order the return of the property. Rule 41(g) expressly provides that the court "may impose reasonable conditions to protect access to the property and its use in later proceedings."

On May 2, 2014, Cobb filed a proposed prehearing order defining the scope of the Rule 41(g) hearing. According to Cobb, the hearing presents one question: whether it is reasonable under the totality of the circumstances for the government to retain every dollar contained within the seized accounts. (*See* Proposed Order (#7) at 3:6). In accordance with Cobb's proposed prehearing order, and the court's jurisdictional discussion above (*see supra* § III(B)(3)), the hearing will address four questions: (1) whether the funds where located in the District of Nevada when they were seized; (2) whether probable cause existed; (3) whether the government failed to segregate legitimate funds from those allegedly involved in money laundering; and (4) whether the government needs to maintain possession of Cobb's personal property because of an ongoing investigation.

/// /// ///

/// /// ///

/// /// ///

28

ACCORDINGLY, and for good cause shown,

## ORDER

**A.**   *The Movants must Serve the Government*

IT IS ORDERED that Cobb SERVE a copy of his equitable complaint on the government pursuant to Rule 4(i)(1) on or before FRIDAY, MAY 30, 2014.

**B.**   *The Parties must file a Joint Prehearing Order*

IT IS FURTHER ORDERED that the parties must MEET & CONFER and STIPULATE to a joint prehearing order for the court's WEDNESDAY, JUNE 4, 2014 evidentiary hearing. The joint prehearing order must identify proposed witnesses, proposed exhibits, and objections to the proposed witnesses and proposed exhibits.

IT IS FURTHER ORDERED that the parties' joint prehearing order must be filed on or before WEDNESDAY, MAY 28, 2014.

**C.**   *The Government's Motion to Stay is Denied*

IT IS FURTHER ORDERED that that the government's motion to stay (#10) is DENIED.

IT IS FURTHER ORDERED that the court's WEDNESDAY, JUNE 4, 2014 evidentiary hearing will PROCEED as scheduled.

**D.**   *The Government's Memoranda will be Unsealed*

IT IS FURTHER ORDERED that the Clerk of Court will UNSEAL the government's motion to dismiss and motion to stay—but not the exhibits—on FRIDAY, MAY 30, 2014, unless the government demonstrates why the motions should remain sealed under *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006).

**E.** *The Movant's Motion to Compel is Granted*

IT IS FURTHER ORDERED that Cobb's motion to compel is GRANTED. The government must produce the computers by 4:00 P.M. ON MONDAY, MAY 19, 2014.

IT IS FURTHER ORDERED that a government agent must meet with movant's counsel, or a designated agent, on or before 4:00 P.M. on THURSDAY, MAY 15, 2014, at FRY'S ELECTRONICS, INC. at 6845 S. Las Vegas Blvd., Las Vegas, NV 89119 or another electronic store agreed by the parties. The government must pick out the required hardware. Movant's counsel must pay for the required hardware.

IT IS FURTHER ORDERED that the government must file a STATUS REPORT regarding the purchase of the required hardware by 4:00 P.M. ON FRIDAY, MAY 16, 2014.

**F.** *The Parties will Brief the Movant's Motion for Expenses*

IT IS FURTHER ORDERED that the government's opposition to Cobb's motion for Rule 37(a)(5) expenses is due by FRIDAY, MAY 23, 2014. Cobb's reply is due WEDNESDAY, MAY 28, 2014.

**G.** *The Government must Show Cause*

IT IS FURTHER ORDERED that counsel for the government, Daniel Hollingsworth and Cristina Silva, must SHOW CAUSE why they should not be held in contempt for disobeying the court's April 21, 2014 order instructing counsel for both parties to submit a joint prehearing order.

IT IS FURTHER ORDERED that Daniel Hollingsworth and Cristina Silva must file POINTS AND AUTHORITIES responding to the court's order to show cause on or before FRIDAY, MAY 23, 2014. Movant's RESPONSE, if filed, is due on WEDNESDAY, MAY 28, 2014. Daniel Hollingsworth and Cristina Silva reply, if a response is filed, is due on 8:00 A.M. on MONDAY, JUNE 2, 2014.

**H.** *The Clerk of Court is directed to Email Copies of this Order to Counsel.*

### RECOMMENDATION

IT IS RECOMMENDED that Cobb's six actions—(i.e., 13–mj–947, 13–mj–948, 13–mj–951, 13–mj–954, 13–mj–953, 13–mj–961)—be CONSOLIDATED.

IT IS FURTHER RECOMMENDED that the government's motion to dismiss (#9) be DENIED.

IT IS FURTHER RECOMMENDED that the Honorable Gloria M. Navarro, Chief U.S. District Court Judge, ASSIGN Cobb's consolidated actions—(i.e., 13–mj–947, 13–mj–948, 13–mj–951, 13–mj–954, 13–mj–953, 13–mj–961)—to a U.S. District Court Judge and U.S. Magistrate Judge responsible for further proceedings in accordance with the Federal Rules of Civil Procedure, under the name *Glen Cobb, Charles Cobb, Anna Cobb, and Monica Namnard v. Daniel G. Bogdan, U.S. Attorney for the District of Nevada*.

DATED this 15th day of May, 2014.

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE